UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARGARET MORAIS,

                Plaintiff,

v.                                            3:16-CV-1487
                                            (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                          OF COUNSEL:

LACHMAN, GORTON LAW FIRM         PETER GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.       SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local

Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 14.).

       Currently before the Court, in this Social Security action filed by Margaret Morais

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 9, 10, 11.)  For the reasons set forth

below, Plaintiff's motion is denied and Defendant's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1958.  (T. 57.)  She completed high school.  (T. 163.)

Generally, Plaintiff's alleged disability consists of chronic obstructive pulmonary

disorder, osteoarthritis, and shoulder impingement.  (T. 57.)  Her alleged disability onset

date is March 14, 2011.  (*Id.*)  Her date last insured is September 30, 2016.  (*Id.*)  She

previously worked in housekeeping, inspection, and wiring.  (T.152.)

### B.    Procedural History

On August 29, 2013, Plaintiff applied for a period of Disability Insurance Benefits

("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the

Social Security Act.  (T. 65.)  Plaintiff's applications were initially denied, after which she

timely requested a hearing before an Administrative Law Judge ("the ALJ").  On July 23,

2015, Plaintiff appeared before the ALJ, John P. Ramos.  (T. 35-56.)  On September 4,

2015, ALJ Ramos issued a written decision finding Plaintiff not disabled under the

Social Security Act.  (T. 7-34.)  On November 29, 2016, the Appeals Council ("AC")

denied Plaintiff's request for review, rendering the ALJ's decision the final decision of

the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this

Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 12-30.)  First, the ALJ found Plaintiff met the insured status

requirements through September 30, 2016 and Plaintiff had not engaged in substantial gainful activity since March 14, 2011.  (T. 12.)  Second, the ALJ found Plaintiff had the severe impairments of degenerative joint disease of the left shoulder, degenerative disc disease of the lumbar spine, history of left foot/toe surgery, degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease, and obesity.  (*Id.*)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 14.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work.  (T. 16.)[1]  Fifth, the ALJ determined Plaintiff was capable of performing her past relevant work as a computer chip inspector (DOT 726.384-018).  (T. 29-30.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to include reaching limitations in his RFC determination.  (Dkt. No. 9 at 11-13 [Pl.'s Mem. of Law].)  Second, and lastly, Plaintiff argues she cannot perform her past relevant work as actually or generally performed because such work requires frequent reaching.  (*Id.* at 13-15.)

### B.    Defendant's Arguments

---

[1]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. §§ 404.1567(a), 416.967(a).

In response, Defendant makes two arguments.  First, Defendant argues the ALJ appropriately evaluated the medical opinion evidence in determining Plaintiff's RFC. (Dkt. No. 10 at 6-13 [Def.'s Mem. of Law].)  Second, and lastly, Defendant argues the ALJ correctly found Plaintiff was able to return to her past relevant work as a computer chip inspector.  (*Id*. at 13-15.)

### C.    Plaintiff's Reply

Plaintiff filed a reply brief in which she asserts Defendant improperly reframed the issues in an attempt to obfuscate the ALJ's legal error.  (Dkt. No. 11 at 1-4 [Pl.'s Reply].)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs*., 733 F.2d 1037, 1041 (2d Cir. 1984).

### D.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

(1) whether the claimant is currently engaged in substantial gainful activity;
(2) whether the claimant has a severe impairment or combination of

impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.     ANALYSIS

Plaintiff argues the ALJ impermissibly substituted his own opinion for the opinions in the record in determining Plaintiff could perform a full range of sedentary work without any restrictions to reaching.  (Dkt. No. 9 at 11-15 [Pl.'s Mem. of Law].) Plaintiff contends every medical source opinion in the record, including a treating source opinion, stated Plaintiff had limitations in her ability to reach.  (*Id.* at 12.)  Plaintiff argues the ALJ may reject the findings of a treating source only if there is a contrary medical opinion, and because no such opinion existed, the ALJ was bound by the treating source's opinion.  (*Id.* at 12-13.)[2]

Plaintiff does not argue the ALJ erred in his determination she could perform the exertional or other non-exertional demands of sedentary work.  Plaintiff only asserts the ALJ erred in his determination that she could perform the reaching requirements of sedentary work and ultimately her past relevant work.  Therefore, only the evidence relevant to Plaintiff's ability to reach will be summarized and discussed herein.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is

---

[2]     Plaintiff stresses that this "is not about the ALJ's weighing of the medical opinion, but, rather, of the ALJ improperly substituting his lay opinion for that of undisputed medical opinion."  (Dkt. No. 11 at 1 [Pl.'s Reply].)

not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)[3]; *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.  *Greek*, 802 F.3d at 375 (citing *Snell*, 177 F.3d 128, 131 (2d Cir. 1999)).

Matthew Bennett, M.D., and other providers at Tier Orthopedic Associates, P.C., provided Plaintiff with orthopedic care.  Plaintiff sought treatment from Dr. Bennett for her neck and left arm/shoulder pain in January of 2010.  (T. 348-349.)  She was diagnosed with left acromioclavicular joint arthralgia and underwent a left distal clavicle resection in June 2010.  (T. 355-356.)

Plaintiff returned to Tier Orthopedic in April of 2013 with complaints of neck and left shoulder pain, which had gotten worse "over the last month."  (T. 307.)  A nurse practitioner noted weakened supraspinatus strength 4/5 against resistance, equivocal drop arm, positive impingement, and limited range of motion due to pain.  (*Id.*)  In June of 2013, Dr. Bennet examined Plaintiff, reviewed a recent MRI, and assessed left shoulder impingement, rotator cuff tendonitis, delamination versus tear and bicep tendonitis.  (T. 312.)  He noted Plaintiff continued to have difficulty and that "overhead activity" was "not an option for her."  (*Id.*)  Plaintiff elected arthroscopic surgery.  (*Id.*)

On October 18, 2013, Plaintiff underwent left shoulder arthroscopic surgery.  (T. 316.)  On October 28, 2013, Dr. Bennett observed that Plaintiff had no pain on passive

---

[3]      Effective March 27, 2017, many of the Regulation cited herein have been amended, as have SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

motion and was neurovascularly intact.  (T. 371.)  Dr. Bennett ordered six weeks of physical therapy for passive range of motion.  (T. 372.)  Dr. Bennett warned Plaintiff active motion could rupture her rotator cuff.  (*Id.*)

On November 11, 2013, consultative examiner Michael Rosenberg, M.D. performed an internal medicine examination and provided a medical source statement. (T. 322-326.)  Dr. Rosenberg noted Plaintiff's left shoulder range of motion was not tested per Plaintiff's orthopedic doctor's instruction not to use the shoulder.  (T. 325.) Dr. Rosenberg opined Plaintiff had "moderate restriction for carrying heavy objects involving the left shoulder, as well as a moderate restriction for any activities requiring pulling, pushing, reaching, or repetitive use of the left shoulder."  (T. 325.)  He further opined Plaintiff had moderate restriction for "performing overhead activities involving the left shoulder."  (T. 326.)

On November 25, 2013, Dr. Bennett noted Plaintiff's left shoulder was neurovascularly intact, she had equal and strong grip in her bilateral upper extremities, and she did not have pain with passive range of motion.  (T. 373-374.)  Dr. Bennett recommended Plaintiff continue with physical therapy and to wean out of her sling.  (T. 374.)  On December 31, 2013, Dr. Bennett noted Plaintiff did not appear to be progressing well, had very limited range of motion in her left shoulder, and had 4/5 strength in her left upper extremity.  (T. 376.)  On examination, Plaintiff's left shoulder showed limited range of motion, her left upper extremity showed 4/5 strength, her deep tendon reflexes were 1+ in bilateral biceps and brachioradialis regions, and she was neurovascularly intact.  (T. 375.)  Dr. Bennett noted Plaintiff's shoulder should have had

a greater range of motion at that point post-surgery and he ordered an MRI.  (*Id.*, T. 377-380.)

On January 6, 2014, Dr. Bennett completed a "Questionnaire."  (T. 382-384.)  In relevant part, he opined Plaintiff could use her left arm and hand for reaching and handling less than 1/3 of each working day.  (T. 384.)  Dr. Bennet indicated Plaintiff suffered from her shoulder impairment from January 2010 to "the present."  (*Id.*)  Dr. Bennett indicated on his Questionnaire the limitations provided therein were for the time period January 2010 to January 2014.  (*Id.*)

On January 28, 2014, Plaintiff received treatment from a nurse practitioner at Tier Orthopedic.  (T. 477-479.)  Notations indicated Dr. Bennett reviewed the January 2014 MRI which showed interval rotator cuff repair, status post distal clavicular resection consistent with prior Mumford procedure, interval development of an interstitial type tearing at the supraspinatus tendon at the myotendinous junction, the "tendon distal to this region appears tendinotic, but without discreet tear," interstitial type tear through the intraarticular portion of the long head of the biceps tendon.  (T. 477.)  The nurse practitioner observed Plaintiff had "very limited range of motion," her left upper extremity showed 4/5 strength, and noted that Plaintiff's "lack of progression [was] quite concerning."  (*Id.*)  On exam, Plaintiff's right shoulder had full range of motion; her left shoulder showed "very limited" range of motion including abduction, internal and external rotation; she had "some tenderness" in the anterior aspect of her left shoulder; her left upper extremity showed 4/5 strength; she was neurovascularly intact; and her biceps in the left upper extremity showed 4/5 strength.  (T. 478.)  The nurse practitioner

advised Plaintiff to continue physical therapy, to wean off Percocet, and to follow up in six weeks. (T. 478-479.)

On April 14, 2014, Plaintiff reported shoulder pain and difficulty with range of motion. (T. 480.) Dr. Bennett observed Plaintiff could forward flex 110 degrees and could passively forward flex to 140 degrees. (*Id.*) He observed Plaintiff's left shoulder had external rotation to 46 degrees and internal rotation to lower lumbar. (*Id.*) Plaintiff had "mildly positive impingement testing" and "significant tenderness along the biceps tendon." (*Id.*) Dr. Bennett stated Plaintiff's symptoms were "multifactorial" and "part of her pain" was coming from adhesive capsulitis, part from the biceps tendon, and "perhaps" from a tear of the muscle belly. (T. 481.) Plaintiff received an injection in her bicep tendon and was told to work on home exercises. (*Id.*) Dr. Bennett noted if Plaintiff did not improve he might need to consider "manipulation under anesthesia." (*Id.*)

On May 30, 2014, treatment notations indicated Plaintiff received treatment for "left shoulder adhesive capsulitis, improved." (T. 482.) Plaintiff reported she was "doing the same" and was not having significant pain. (*Id.*) Dr. Bennett noted on exam, "[i]nterestinly, her exam is markedly different from her last exam. She can now forward flex 160 [degrees]. I can get her to 180 [degrees]. External rotation is 60 [degrees]. Negative impingement testing. Negative stress testing along the biceps." (T. 482.) Dr. Bennett stated Plaintiff was "markedly improved" and her range of motion was "improved." (T. 483.) He noted Plaintiff's cuff strength remained intact and she was to continue with strengthening exercises. (*Id.*) Plaintiff was to follow up in three months. (*Id.*)

Six months later, on November 17, 2014, Plaintiff presented for a recheck of her left shoulder adhesive capsulitis. (T. 484.) Plaintiff reported home exercises helped, but she still had difficulty with abduction. (*Id.*) Plaintiff declined a cortisone injection and stated she "would like to try to manage this on her own." (T. 485.) On examination Plaintiff's left shoulder was "atraumatic." (T. 485.) The nurse practitioner was "unable to reproduce any tenderness on palpation." (*Id.*) Plaintiff had difficulty with abduction, but had "good adduction," "good internal and external rotation," negative impingement testing, and was neurovascularly intact. (*Id.*)

Plaintiff did not seek treatment for her shoulder impairment from Dr. Bennett after November 17, 2014; however, Plaintiff did continue to receive treatment from Tier Orthopedic for low back pain. (T. 488-496.) Treatment notes dated after November 2014 did not contain complaints of shoulder pain. (*Id.*)

In October of 2014, Plaintiff presented to her primary care physician, Uzma Anis, M.D., with complaints of "feeling poorly" and mild back pain. (T. 414.) A physical exam at the time indicated "normal" gait, station, range of motion, and muscle strength/tone. (T. 416.) In December of 2014, Plaintiff presented to Dr. Anis for a pre operation clearance for a cyst removal from her toe. (T. 409.) Dr. Anis noted Plaintiff was "doing well" and her "functional activity level [was] excellent." (T. 409.) On exam, Dr. Anis noted Plaintiff's gait and station, joints, bones, muscles, range of motion, and muscle strength/tone were all normal. (T. 412.) In January, March, and April of 2015, Plaintiff sought treatment for back pain. (T. 395, 399, 404.)

On June 8, 2015, neurologist Khalid Sethi, M.D., treated Plaintiff for complaints of low back pain. (T. 470.) On exam, Dr. Sethi noted Plaintiff had full motor strength in

her upper extremities with no focal weakness, and her muscle bulk and tone were within normal limits.  (T. 470.)

On July 2, 2015, a nurse practitioner with Tier Orthopedic completed a "Questionnaire."  (T. 475-476.)  The nurse did not complete the portion of the form asking for Plaintiff's conditions and diagnoses.  (T. 475.)  The nurse indicated Plaintiff could use her left arm and hand for reaching and handling less than 1/3 of each working day.  (T. 476.)  The nurse did not complete the section of the form asking for a time period for the limitations provided in the Questionnaire.  (*Id.*)  Of note, there were no contemporaneous treatment notations from July 2, 2015.

The ALJ did not adopt the reaching limitations provided in the January 2014 and July 2015 statements.  The ALJ stated the opinions of a treating orthopedic provider would "normally be given controlling weight"; however, he declined to do so.  (T. 28.)  The ALJ went on to provide good reasons for affording Dr. Bennett's statement, specifically his reaching limitations, less than controlling weight.

In affording Dr. Bennett's statement less than controlling weight, the ALJ reasoned the January 2014 statement was provided shortly after Plaintiff's October 2013 surgery and treatment notations demonstrated that Plaintiff made "an excellent" recovery from shoulder surgery.  (*Id.*)  In support of his determination, the ALJ cited Dr. Bennett's May 30, 2014 opinion that Plaintiff's shoulder was "markedly improved" and the November 17, 2014 notation indicating Plaintiff was not looking for any further intervention.  (*Id.*); *see Wider v. Colvin*, 245 F. Supp. 3d 381, 390 (E.D.N.Y. 2017) (in cases filed prior to March 27, 2017, diagnoses, prognoses, and statements about the severity and nature of impairments are medical opinions).  The ALJ noted that after

November 2014 Plaintiff did not seek any additional medical treatment for her left shoulder. (*Id.*) The ALJ also noted that the July 2015 statement failed to identify medical conditions or diagnosis as basis for the limitations, the limitations were "speculative," and the "less than sedentary" limitations were inconsistent with the opinion of the consultative examiner. (T. 29.)

Plaintiff contends the ALJ was required to adopt Dr. Bennett's reaching limitations because no other medical source provided a contrary opinion. (Dkt. Nos. 9, 11 [Pl.'s Mems. of Law].) To be sure, the Second Circuit has held that an ALJ is "not entitled to assign minimal or no weight" to a treating source without "input from additional medical practitioners." *Gavazzi v. Berryhill*, 687 F. App'x 98 (2017). The Court in *Gavazzi* determined an ALJ did not properly assess a treating physician's opinion because he failed to cite to any contrary medical opinion and stated in conclusory fashion that the physician's opinion was not supported by treatment notations. *Gavazzi*, 687 F. App'x at 100. However, to conclude that the ALJ erred in not adopting Dr. Bennett's because there was no contrary medical opinion relies on too narrow a reading of *Gavazzi* and ignores the facts of the case.

Here, unlike in *Gavazzi*, the ALJ provided good reasons for not adopting Dr. Bennett's opinions and cited specific medical evidence in the record to support his determination, including Dr. Bennett's May 2014 medical opinion that Plaintiff was markedly improved. An ALJ retains the discretion to reach a conclusion inconsistent with an opinion of a treating physician where that conclusion is supported by sufficient contradictory evidence. *See Dumas v. Schweiker,* 712 F.2d 1545, 1550 (2d Cir.1983). In this case, there was sufficient evidence in the record that contradicted the treating

source's opinion, including treatment records and a subsequent medical opinion that showed Plaintiff's shoulder impairment improved.

To be sure, a contrary medical opinion may constitute substantial evidence to overcome a treating source opinion. *Gavazzi*, 687 F. App'x at 100. However, the Second Circuit as held that substantial evidence may also be found in internal inconsistencies, contrary treatment notes, and other evidence in the record such as plaintiff's activities. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (ALJ comprehensively explained reasons for discounting treating source statement and did not impermissibly substitute her own expertise, where she rejected the treating source opinion because it was contrary to physician's treatment notes and other evidence in the record). And further, as in the present case, an ALJ may rely on notations showing improvement in a plaintiff's condition when weighing the medical opinion evidence in the record. *See Cohen v. Comm'r of Soc. Sec.,* 643 F. App'x 51, 53 (2d Cir. 2016) (ALJ properly afforded treating source opinion less than controlling weight where treatment records showed improvement in plaintiff's condition); *see Bliss v. Comm'r of Soc. Sec.,* 406 F. App'x 541, 542 (2d Cir. 2011) (treating source assessment was contradicted by own treating notes which reflected lesser limitations and improvement in plaintiff's impairment).

A reading of the record as a whole supports the ALJ's determination to afford Dr. Bennett's statement less than controlling weight because Plaintiff's shoulder impairment improved after surgery. Dr. Bennett's reaching limitations were provided shortly after Plaintiff's surgery. (T. 27-28; 382-384.) Contemporaneous treatment notations indicated Plaintiff was not progressing well and she had very limited range of motion in

her shoulder.  (T. 375-376, 477.)  Plaintiff's shoulder impairment was not improved as of April 2014.  (T. 480.)  However, in May 2014, Dr. Bennett opined that Plaintiff's shoulder impairment had "markedly improved."  (T. 483.)  In November of 2014 Plaintiff noted "some" difficulty with abduction; however, the objective examination of her shoulder showed she had good range of motion, her shoulder was atraumatic, and she was not seeking further treatment.  (T. 484.)  Treatment records showed improvement in Plaintiff's condition, as evidenced by Dr. Bennett's medical opinion that Plaintiff was "markedly" improved.

In addition, Dr. Bennett's January 2014 statement clearly indicated that the limitations imposed therein where for the time period of January 2010 to January 2014. (T. 384.)  Further, the July 2015 statement was completed by a non-acceptable medical source and the ALJ properly noted the July 2015 statement failed to identify Plaintiff's conditions or diagnoses.  (T. 28); *see Camille v. Colvin*, 652 F. App'x (2d Cir. 2016) (among good reasons for affording treating source limited weight included source's opinion conflicted with own notes, and the check-box form requested narrative explanation which was not provided); *see LaValley v. Colvin*, 2017 WL 129154 (2d Cir. January 12, 2017) (treating nurse practitioner's opinion was not entitled to controlling weight because only acceptable medical sources may be considered treating sources). Therefore, substantial evidence in the record, including Dr. Bennett's medical opinion in May 2014 that Plaintiff's shoulder impairment had markedly improved, supported the ALJ's conclusion to not adopt Dr. Bennett's reaching limitations.

Of note, Dr. Rosenberg's opinion was provided shortly after Plaintiff's surgery as well.  (T. 322.)  He did not conduct an examination of her left shoulder.  (T. 325.)

Despite not conducting an exam of her left shoulder, he opined that she had "moderate" restrictions for overhead activities involving her left shoulder. (T. 326.) The ALJ concluded because Dr. Rosenberg's opinion was provided only one month after her surgery and evidence submitted after his examination indicated Plaintiff had an excellent recovery, he did not adopt Dr. Rosenberg's left shoulder limitations. (T. 27.)

Overall, the ALJ did not substitute his opinion for that of Dr. Bennett or any other medical source opinion. Here, the ALJ assessed the opinion in the context of the record as a whole. The ALJ thoroughly outlined all of the medical evidence in the record pertaining to Plaintiff's shoulder impairment and provided specific citation to the record to support his weight determinations. When the medical opinions in the record are read within the context of the record as a whole, substantial evidence supports the ALJ's determination that Plaintiff's left shoulder impairment improved after surgery and any reaching limitations were no longer supported. Further, in assessing Dr. Bennet's January 2014 opinion the ALJ relied on the doctor's May 2015 opinion that Plaintiff's left shoulder had markedly improved. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (within ALJ's province to resolve conflicting evidence in the record). The ALJ properly noted that the record contained no complaints of shoulder pain or limitations after November 2014. *Dumas*, 712 F.2d at 1553 (an ALJ is entitled to rely not only on what the record says, but also on what it does not say) (internal citation omitted). Therefore, the ALJ properly weighed the medical opinion evidence in the record regarding Plaintiff's ability to reach. The evidence in the record, as outlined herein and thoroughly by the ALJ in his determination, indicated that Plaintiff did not have reaching restrictions

after November of 2014 when she ceased seeking treatment for any shoulder pain or limitations.

Plaintiff also asserts that she was unable to return to her past sedentary work as a computer chip inspector because the demands of that job include frequent reaching, which is inconsistent with the medical opinions limiting her ability to reach.  (Dkt. No. 9 at 13-16 [Pl.'s Mem. of Law].)

At step four of the five step sequential evaluation process for determining whether an individual is disabled, the ALJ must determine whether Plaintiff had the RFC to perform the requirements of her past relevant work.  20 C.F.R. § 404.1520(f), 416.920(f).  Plaintiff bears the burden of proving that she can no longer perform her past relevant work.  *Id.* at § 404.1520(f), 416.920(f).

The ALJ determined that Plaintiff could perform a full range of sedentary work. (T. 16.)  The ALJ concluded Plaintiff's past relevant work as a computer chip inspector, DOT 726.384-018, entailed work performed at the sedentary level.  (T. 30.)  The ALJ determined Plaintiff could perform the job as generally performed.  (*Id.*)  According to the DOT listing, the occupation requires frequent reaching.  DOT 726.384-018.  Plaintiff asserts she cannot return to her past relevant work as a computer chip inspector because she cannot perform the reaching requirements.  (Dkt. No. 9 at 13-15 [Pl.'s Mem. of Law].)  However, for the reasons stated herein, the ALJ did not err in his determination that Plaintiff could perform sedentary work without any additional reaching restrictions.  Therefore, the ALJ did not err in his step four determination that Plaintiff could perform the requirements of her past relevant work as generally performed.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

> **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is

> **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:      March 22, 2018

William B. Mitchell Carter
U.S. Magistrate Judge